FILED
United States Court of Appeals
Tenth Circuit

October 14, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

STEVEN LUCAS, an individual,

Plaintiff–Appellant,

v.

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON, a foreign
insurance company,

Defendant–Appellee.

No. 11-6056
(D.C. No. 5:10-CV-00206-M)
(W.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before **KELLY**, **GORSUCH**, and **MATHESON**, Circuit Judges.

---

Steven Lucas filed suit against Liberty Life Assurance Company of Boston,

asserting that the company violated the Employee Retirement Income Security

Act of 1974 (ERISA) when it denied his claim for long term disability benefits.

Finding that the denial of benefits was not arbitrary and capricious, the district

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

court entered judgment in favor of Liberty Life. Mr. Lucas now appeals, and we affirm.

In 2004, Mr. Lucas was an employee of the Coca-Cola Company. He suffered a work-related injury requiring spinal surgery and, after a short period back on the job, stopped working. He filed a claim for long-term disability benefits in August 2005.

Under Coca-Cola's long-term disability plan, a plan participant is considered disabled and is eligible for 24 months of benefits when he is "unable to perform the Material and Substantial Duties of his *Own* Occupation." Aplt. App., Vol. 1 at 6 (emphasis added). Mr. Lucas received benefits under this provision from August 2005 through August 2007. To be considered disabled and eligible to receive benefits after this first 24 months, the participant must be "unable to perform, with reasonable continuity, the Material and Substantial Duties of *Any* Occupation." *Id*. (emphasis added).

Liberty Life both administers and insures Coca-Cola's long-term disability benefits plan. Under the plan, it has discretionary authority to determine eligibility for benefits. In September 2007, Liberty Life terminated Mr. Lucas's benefits after determining that he was not eligible for continued benefits under the "any occupation" provision—while he might not be capable of performing his *own* occupation, he was capable of performing *some* occupation comparable to his former position. Mr. Lucas filed an administrative appeal with Liberty Life, but

the company upheld the denial of benefits. In the fall of 2008, Mr. Lucas began working as a teacher at a university. He held that position through the school year.

Mr. Lucas filed suit against Liberty Life in October 2008. The district court dismissed that suit after the parties determined that one of the medical reports in the administrative record was not the final version of the report and Liberty Life agreed to re-open the administrative appeal. On further review, Liberty Life again upheld its denial of benefits and Mr. Lucas again filed suit. The district court entered judgment in favor of Liberty Life and this appeal followed.

Before this court, Mr. Lucas alleges multiple errors by the district court. However, on an appeal from denial of disability benefits, "[w]e review a plan administrator's decision to deny benefits to a claimant, as opposed to reviewing the district court's ruling." *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009). Because Liberty Life has discretionary authority under the plan, we review its determination for abuse of discretion—asking only whether the decision is "arbitrary and capricious." *See id.*; *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1010 n.10 (10th Cir. 2008) (in the ERISA context, the terms "abuse of discretion" and "arbitrary and capricious" are used interchangeably).

We agree with the district court that Liberty Life's decision to deny continued benefits to Mr. Lucas was not arbitrary and capricious. A decision is "arbitrary and capricious" only if it lacks a "reasoned basis." *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). And where there is substantial evidence to support the decision we will generally uphold the denial of benefits. *See id.* In this case, Liberty Life had a reasoned basis, supported by substantial evidence, for denying the claim. Liberty Life reviewed Mr. Lucas's claim three times. Each time it issued a decision letter with extensive citation to medical records and reports and its own investigative surveillance. These cited facts adequately support its position that Mr. Lucas was able to engage in other full-time work despite his impairment. *See* Aplt. App., Vol. 6 at 2073-2085; *id.*, Vol. 1 at 103-110; *id.* at 95-101.

Liberty Life had reports from five physicians concluding that Mr. Lucas had at least a sedentary, full-time work capacity. Additionally, Liberty Life requested an independent neuropsychological review to address the possibility that Mr. Lucas might suffer cognitive impairment due to his pain medication regimen. Dr. Mickey Ozolins met with Mr. Lucas over the course of three days to conduct this review. Dr. Ozolins reported that throughout the evaluation Mr. Lucas showed clear signs of symptom exaggeration and feigning consistent with malingering. Dr. Ozolins concluded that Mr. Lucas was capable of performing sedentary to medium-duty work activities.

Liberty Life also relied on records from Mr. Lucas's primary treating physician, Dr. Bruce Mackey. Though Dr. Mackey stated that Mr. Lucas was permanently and totally disabled, his records included notes indicating that Mr. Lucas was not as restricted as he claimed. Liberty Life further noted that Dr. Mackey often refused to respond to requests from its independent physicians to discuss Mr. Lucas's condition. On these facts, Liberty Life concluded that there was insufficient objective medical evidence to establish that Mr. Lucas's condition precluded him from performing jobs consistent with his skills.

Liberty Life acknowledged that Mr. Lucas had been approved for Social Security disability income benefits and noted that it had fully considered that ruling. But, as Liberty Life explained, the Social Security decision "does not determine entitlement to benefits under the terms and conditions of the [long-term disability] policy." Aplt. App., Vol. 1 at 101. Liberty Life went on to note that it had

> obtained and considered Dr. Smith's Independent Medical Examination, Dr. Ozolins' Neuropsychological Evaluation, the medical review by Dr. Klein and multiple additional evaluators, as well as surveillance reports and video, and deposition transcripts that were not considered by the Social Security Administration in its determination process.

*Id*.

Finally, Liberty Life noted that Mr. Lucas had actively applied for full-time teaching positions and, during the same time, was taking doctoral classes in

Business Management. He ultimately secured a university teaching position. Liberty Life admitted that it was "unclear" whether Mr. Lucas was laid off or resigned from his position at the university, but emphasized that Mr. Lucas "did hold a full time teaching position from August 2008 through [May 2009]." *Id.* at 100.

Because Liberty Life is both administrator and insurer of the plan, we recognize that it has an inherent conflict of interest. *See Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1296 and n.4 (10th Cir. 2000). This conflict is one factor we consider in determining whether Liberty Life's decision was arbitrary and capricious. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115-117 (2008). However, we agree with the district court that this conflict should be given limited weight in this case.

As the Supreme Court explained in *Glenn*, the conflict-of-interest factor "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." 554 U.S. at 117. Here, Liberty Life undertook extensive measures to investigate whether Mr. Lucas was able to perform the duties of a gainful occupation for which he was reasonably suited. Liberty Life repeatedly requested and reviewed the medical records from Mr. Lucas's healthcare providers. It also took steps to reduce its inherent bias by requesting five independent physician reviews of Mr. Lucas's medical records and two independent physician

examinations of Mr. Lucas. *See Holcomb*, 578 F.3d at 1193 (recognizing that an administrator can reduce its bias by using independent physicians). Moreover, Liberty Life had its independent physicians contact Dr. Mackey in an effort to discuss Mr. Lucas's condition.

The fact that Mr. Lucas's treating physician drew a conclusion contrary to Liberty Life's determination does not mean that Liberty Life's decision was unreasonable. Liberty Life has no obligation "to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Liberty Life's decision is supported by substantial evidence, and Mr. Lucas has failed to show that it was arbitrary and capricious.

Accordingly, the judgment of the district court is affirmed.[1]


Entered for the Court


Neil M. Gorsuch
Circuit Judge

---

[1] Mr. Lucas contends that the district court erred in not ruling on his claim that his benefits should be reinstated during the time he was pursuing administrative appeals of the initial denial. In his complaint before the district court Mr. Lucas made this claim in a two-sentence paragraph with no citation to legal authority or to any language in the long-term disability plan authorizing payment of benefits while a claim is under review. Aplt. App., Vol. 10 at 3338. Accordingly, he failed to make this claim adequately before the district court. *See* Fed. R. Civ. P. 8(a). Even if he had, on appeal he offers no authority to support his position that he is entitled to benefits while his claim was under review, particularly when his claim was ultimately unsuccessful. We decline to consider the issue. *See United States v. Banks*, 451 F.3d 721, 728 (10th Cir. 2006) (declining to consider argument not supported by pertinent authority).